# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NOVEL ENERGY SOLUTIONS, LLC, | Date Filed: 07/31/2020 |
| *Plaintiff*, | Case No.: 1:20-cv-05992 |
| v. | |
| PINE GATE RENEWABLES, LLC, and GREEN STREET POWER PARTNERS, | **COMPLAINT** |
| *Defendants*. | **DEMAND FOR JURY TRIAL** |

Plaintiff, NOVEL ENERGY SOLUTIONS, LLC ("Plaintiff"), by and through its attorneys, Buchanan Ingersoll & Rooney PC, for its Complaint against PINE GATE RENEWABLES, LLC ("Pine Gate") and GREEN STREET POWER PARTNERS ("Green Street;" together with Pine Gate, "Defendants"), alleges as follows:

## I.    NATURE OF THE ACTION

1.    This is an action for breach of contract, unjust enrichment and a declaratory judgment arising from Defendants' failure to reimburse Plaintiff for its overpayment of an interconnection utility fee as required by the parties' agreement.

2.    Specifically, Plaintiff seeks payment of $415,275.50 that was wrongfully withheld by Defendants in violation of the Membership Interest Purchase Agreement (the "Agreement") executed by Plaintiff and Pine Gate on February 2, 2018. The Agreement is annexed to this Complaint as **Exhibit A**.

3. The parties entered into the Agreement for the sale of four solar energy projects by Plaintiff to Pine Gate. Pursuant to the Agreement, the parties subtracted from the projects' purchase price the amount necessary to pay the projects' estimated interconnection fee, which was charged by the local utility company to connect the projects to the power grid, and paid by Plaintiff as a deposit prior to the construction of the projects. Because the interconnection fee was only an estimate, the parties agreed that the any additional interconnection fee charged to Pine Gate by the utility would be paid by Plaintiff, and that any refund from the utility would be paid to Plaintiff. Indeed, Pine Gate followed the Agreement with respect to interconnection reimbursements to Novel previously.

4. In fact, Pine Gate honored the parties' Agreement in its course of action regarding another project in the Agreement – the Imholte project. After Imholte was connected to the power utility, Pine Gate received a refund of the interconnection fee paid by Plaintiff. Pine Gate immediately returned the refund to Plaintiff. This course of dealing with the Imholte Project confirmed the parties' Agreement and makes clear that the refund at issue here should have been returned to Plaintiff.

5. However, prior to the issuance of the final invoice by the utility for one of the projects, the "Held Project," Pine Gate sold the project to Defendant Green Street Power Partners ("Green Street"). Thereafter, the local utility company operating the power grid to which the Held Project was connected issued an invoice showing that the estimated interconnection fee for that project – which had been advanced by Plaintiff – had been overstated by $415,275.50. The utility then issued a refund of $415,275.50 (the "Interconnection Refund") to Green Street because Green Street was the point of contact on the utility company's website at that time.

6. Notwithstanding that Plaintiff's Agreement with Pine Gate mandated that the Interconnection Refund be returned to Plaintiff, Green Street refused to reimburse Plaintiff, claiming that it is not bound by the terms of Plaintiff's Agreement with Pine Gate. Pine Gate likewise refused to compensate Plaintiff for the amount of the refund.

7. Therefore, Plaintiff now seek an order from this Court enforcing the Agreement and requiring Defendants to reimburse Plaintiff the amount of the Interconnection Refund.

## II.     PARTIES

8. Plaintiff Novel is a limited liability company formed in the State of Minnesota with its corporate headquarters located at 2303 Wycliff Street, Suite 300, Saint Paul, MN 55114.

9. Defendant Pine Gate is a limited liability company formed in the State of North Carolina with its corporate headquarters located at 130 Roberts Street, Asheville, NC 28801.

10. Defendant Green Street is a limited liability company formed in the State of New York with its corporate headquarters located at 1 Landmark Square Suite 320, Stamford, CT 06901.

## III.     JURISDICTION AND VENUE

11. This Court has original jurisdiction of this civil action pursuant to 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between the parties and the amount in controversy, exclusive of interest and costs, exceeds $75,000.

12. Venue is proper in this judicial district because Plaintiff and Pine Gate voluntarily submitted to this Court's jurisdiction pursuant to Section 9.12(b) of the Agreement, which provides:

> a. THE PARTIES HEREBY IRREVOCABLY SUBMIT TO THE EXCLUSIVE JURISDICTION OF ANY STATE OR FEDERAL COURT IN THE STATE OF NEW YORK LOCATED IN THE BOROUGH OF MANHATTAN IN NEW YORK COUNTY AND OF THE FEDERAL DISTRICT COURT FOR THE

SOUTHERN DISTRICT OF NEW YORK LOCATED IN THE BOROUGH OF MANHATTAN FOR PURPOSES OF ANY SUIT, ACTION OR OTHER PROCEEDING ARISING OUT OF THIS AGREEMENT OR ANY TRANSACTION CONTEMPLATED HEREBY AND EACH PARTY HEREBY CONSENTS TO THE JURISDICTION OF SUCH COURTS (AND OF THE APPROPRIATE APPELLATE COURTS THEREFROM) IN ANY SUCH SUIT, ACTION OR PROCEEDING AND IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY LAW, ANY OBJECTION THAT IT MAY NOW OR HEREAFTER HAVE TO THE LAYING OF THE VENUE OF ANY SUCH SUIT, ACTION OR PROCEEDING IN ANY SUCH COURT OR THAT ANY SUCH SUIT, ACTION OR PROCEEDING THAT IS BROUGHT IN ANY SUCH COURT HAS BEEN BROUGHT IN AN INCONVENIENT FORUM. DURING THE PERIOD A LEGAL DISPUTE THAT IS FILED IN ACCORDANCE WITH THIS SECTION 9.12 IS PENDING BEFORE A COURT, ALL ACTIONS, SUITS OR PROCEEDINGS WITH RESPECT TO SUCH LEGAL DISPUTE OR ANY OTHER LEGAL DISPUTE, INCLUDING ANY COUNTERCLAIM, CROSS-CLAIM OR INTERPLEADER, WILL BE SUBJECT TO THE EXCLUSIVE JURISDICTION OF SUCH COURT. EACH PARTY HEREBY WAIVES, AND WILL NOT ASSERT AS A DEFENSE IN ANY LEGAL DISPUTE, THAT (I) SUCH PARTY IS NOT SUBJECT THERETO, (II) SUCH ACTION, SUIT OR PROCEEDING MAY NOT BE BROUGHT OR IS NOT MAINTAINABLE IN SUCH COURT, (III) SUCH PARTY'S PROPERTY IS EXEMPT OR IMMUNE FROM EXECUTION, (IV) SUCH ACTION, SUIT OR PROCEEDING IS BROUGHT IN AN INCONVENIENT FORUM OR (V) THE VENUE OF SUCH ACTION, SUIT OR PROCEEDING IS IMPROPER.

13. This Court has personal jurisdiction over Defendant Green Street because Green Street was formed in the State of New York.

## IV. FACTUAL BACKGROUND

14. On February 2, 2018, Plaintiff and Pine Gate executed a Membership Interest Purchase Agreement, pursuant to which Plaintiff sold its interest in four limited liability partnerships that were developing solar energy projects (the "Projects") in Minnesota:

  a. Novel Solar Three LLP, a Minnesota limited liability partnership (the "Gibbon Project Company"), which was developing an approximately 4.63 $MW_{DC}$ photovoltaic solar energy project in Gibbon, Minnesota (the "Gibbon Project");

4

  b. Novel Solar One LLP, a Minnesota limited liability partnership (the "Held Project Company"), which was developing an approximately 5 MW$_{DC}$ photovoltaic solar energy project in St. Cloud, Minnesota (the "Held Project");

  c. Novel Solar Five LLP, a Minnesota limited liability partnership (the "Imholte Project Company"), which was developing an approximately 1.498 MW$_{DC}$ photovoltaic solar energy project in St. Cloud, Minnesota (the "Imholte Project"); and

  d. Novel Solar Two LLP, a Minnesota limited liability partnership (the "Schneider Project Company"), which was developing an approximately 7 MW$_{DC}$ photovoltaic solar energy project in St. Cloud, Minnesota (the "Schneider Project").

15. Prior to construction of the Projects, the local utility company, Xcel Energy ("Xcel"), required the payment of a deposit the estimated cost of connecting the Projects to the power grid ("Interconnection Fees"). Xcel advised that a final invoice for the Interconnection Fees would be provided following the interconnection, and any refunds would be issued, or overages would be billed, at that time. The estimated Interconnection Fee for each of the projects was as follows:

  a. $304,500 for the Gibbon Project;

  b. $618,005 for the Held Project;

  c. $305,596 for the Imholte Project; and

  d. $565,110 for the Schneider Project;

16. Plaintiff paid the estimated Interconnection Fee for the Held Project, $618,005, to Xcel on January 17, 2018.

17. Section 1.1 of the Agreement set the Project Price for each project at $0.50 per watt (dc) of the final installed size of the Project as increased or decreased by any PPA Adjustment.

18. Section 2.2 of the Agreement required Pine Gate to refund Plaintiff the amount of the estimated Interconnection Fees that Plaintiff had advanced to the Excel at the time of execution of the Agreement. Section 1.1 required the amount of this refund to then be subtracted from the final purchase price of the Projects.

19. Because the estimated Interconnection Fees were deducted from the amount of the purchase price prior to completion of the interconnection and receipt of the final invoices from Xcel, the parties agreed to subsequently true-up the amount of the Interconnection Fees. Specifically, the parties agreed that Pine Gate would return to Plaintiff any Interconnection Refund received from Xcel if the estimated Interconnection Fee was higher than the actual cost of the interconnection. Conversely, Plaintiff would be responsible for payment of any overages charged to Pine Gate if the estimated interconnection fee was less than the ultimate cost of the interconnection,

20. In March 2019, Pine Gate advised Plaintiff that Green Street had agreed to purchase the four Projects from Pine Gate. The purchase agreement between Pine Gate and Green Street did not terminate Pine Gate's obligations under the Agreement, including the obligation to pay the Interconnection Refund, if any, to Plaintiff.

21. On March 18, 2019, Plaintiff entered into a consulting agreement with Green Street, pursuant to which Plaintiff assisted Green Street in its purchase of the Projects from Pine Gate by providing services related to closing items, funding, due diligence and related issues. A copy of the Consulting Agreement is annexed to this Complaint as **Exhibit B**. In fact, Plaintiff was instrumental in ensuring a smooth closing between Pine Gate and Green Street.

22. As a result of the consulting relationship with Plaintiff, Green Street was aware of and familiar with the contract between Plaintiff and Pine Gate, including Plaintiff' rights to receive the Interconnection Refund paid on any of the Projects.

23. The Imholte Project was interconnected to the power grid on April 16, 2019. Xcel subsequently issued a final invoice in the amount of $122,728, which was $182,868 less than the estimated interconnection fee. Xcel issued the $182,868 refund to Pine Gate in September 2019. Pine Gate then immediately transferred the refund to Plaintiff in accordance with the Agreement.

24. Pine Gate's return of the Interconnection Refund to Plaintiff confirmed the parties' agreement that any refund received from Excel for the projects was to be returned to Plaintiff.

25. The Held Project was interconnected to the power grid in June 2019. Thereafter, Xcel issued a final invoice for the interconnection fee, totaling $202,747.50, which was $415,275.50 less than the initial estimate. Xcel issued the $415,275.50 refund (the "Interconnection Refund") to Green Street. The refund was issued to Green Street rather than Pine Gate because Green Street was the point of contact for the Held Project on Xcel's website at that time.

26. On April 24, 2020, Plaintiff demanded payment of the Interconnection Refund from Pine Gate. Despite the terms of the Agreement, and the parties' performance with respect to the Imholte Project, Pine Gate has refused payment on the grounds that Green Street received the Interconnection Refund from Xcel. This, despite the fact that Pine Gate's sale of the projects did not relieve it from its obligations to Plaintiff per the Agreement. Pine Gate has failed to comply with its obligations under the Agreement.

27. On April 24, 2020, Plaintiff demanded the payment of the Interconnection Refund from Green Street. Plaintiff explained that pursuant to its Agreement with Pine Gate, the

$415,275.50 refund was a true-up due back to Novel "because it is our money that we already paid (and was reflected in the purchase price calculation)." Notwithstanding Green Street's consulting relationship with Plaintiff, and knowledge of Plaintiff' right to receive the Interconnection Refund, Green Street has refused to return the Interconnection Refund to Plaintiff.

## VI. GOVERNING LAW

28. Section 9.12 of the Agreement provides that the laws of the State of New York governs "all claims or causes of action (whether in contract or tort) that may be based upon, arise out of or relate to this Agreement, or the negotiation, execution or performance of this Agreement (including any claim or cause of action based upon, arising out of or related to any representation or warranty made in or in connection with this Agreement or as an inducement to enter into this Agreement) . . . ."

29. Accordingly, New York law governs this action.

## VII. CLAIMS FOR RELIEF

### FIRST COUNT
### BREACH OF CONTRACT
### (AGAINST PINE GATE)

30. Plaintiff incorporate the allegations in all prior paragraphs within this Complaint as if they were fully set forth herein.

31. The Agreement is a valid contract.

32. Plaintiff have fully performed their obligations under the Agreement.

33. The Agreement provided that Plaintiff was entitled to any Interconnection Refund issued by Xcel.

34. Xcel issued an Interconnection Refund in the amount of $415,275.50 for the Held Project in June 2019. While the Interconnection Refund was owed to Plaintiff, it was issued to

Green Street because Green Street was listed as the point of contact on Xcel's website as a result of its purchase agreement with Pine Gate. Green Street refused to transfer the refund to Plaintiff.

35. Plaintiff advised Pine Gate that it owed it the amount of the Interconnection Refund. Pine Gate refused to compensate Plaintiff.

36. Accordingly, Pine Gate breached the contract by failing to return the Interconnection Refund to Plaintiff.

37. Plaintiff suffered $415,275.50 in damages as a direct result of Pine Gate's breach of contract.

### SECOND COUNT
### DECLARATORY JUDGMENT
### (AGAINST GREEN STREET)

38. Plaintiff incorporates the allegations in all prior paragraphs within this Complaint as if they were fully set forth herein.

39. There is a justiciable controversy between Plaintiff and Green Street regarding which party is entitled to the Interconnection Refund.

40. Plaintiff paid the full amount of the estimated interconnection fee for the Held Project to Xcel in January, 2018. Pursuant to the Agreement, Plaintiff is entitled to the any refund related to that payment. There is no basis for Green Street to retain the funds that it received solely because it was registered as the point of contact for the Held Project on Xcel's website.

41. This dispute is not hypothetical, contingent or remote, as the refund has been issued to Green Street and Green Street has refused to transfer it to Plaintiff.

42. Therefore, the Court should enter a declaratory judgment clarifying Plaintiff' right to the refund and Green Street's obligation to transfer the amount of the refund to Plaintiff.

## THIRD COUNT
## UNJUST ENRICHMENT
## (AGAINST GREEN STREET)

43. Plaintiff incorporates the allegations in all prior paragraphs within this Complaint as if they were fully set forth herein.

44. Green Street has been unjustly enriched by its retention of the Interconnection Refund because Green Street did not pay any part of the fee that was being refunded. It simply received a windfall because it was listed as the point of contact for the Held Project on Xcel's website.

45. Green Street was unjustly enriched at Plaintiff's expense because Plaintiff was owed the Interconnection Refund under its Agreement with Pine Gate.

46. It is against equity and good conscience to permit Green Street to retain the Interconnection Refund because Green Street had not paid the estimated interconnection fee in the first place, and it has no basis to withhold the refund from Plaintiff. Green Street received the refund only because of its status on Xcel's website. Green Street did not bargain for the Interconnection Refund as Plaintiff did.

47. Plaintiff and Green Street had a sufficiently close relationship because Green Street was aware of Plaintiff' Agreement with Pine Gate and the requirement that the Interconnection Refund be issued to Plaintiff, and because Plaintiff worked closely with Green Street to aid in its closing process when it purchased the Held Project from Pine Gate.

48. Upon information and belief, the price of the Held Project paid by Green Street to Pine Gate did not include the cost of the Interconnection Fee previously paid by Plaintiff. As such, Green Street would be unjustly enriched if it were to keep the Interconnection Refund.

## VIII.  PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully request that judgment be entered upon the First, Second, and Third causes of action against Defendants, jointly and severally, awarding the following relief to Plaintiff:

**(a)** Enforce the Agreement and compel Pine Gate to pay the full amount of the Interconnection Refund, $415,275.50, to Plaintiff;

**(b)** Enter declaratory judgment that Plaintiff are entitled to the Interconnection Refund issued by Excel to Green Street;

**(c)** Enter judgment that Green Street was unjustly enriched by its receipt of the Interconnection Refund and compel Green Street to transfer the full amount of the refund, $415,275.50, to Plaintiff; and

**(d)** Such other and further relief as the Court may deem just and proper.

DATED:  July 31, 2020
New York, New York

**BUCHANAN INGERSOLL & ROONEY PC**

By: _____
Stephen J. Riccardulli (SR 7784)
Melissa J. Bayly
640 5th Avenue
9th Floor
New York, NY 10019-6102
Tel. 212-440-4400

*Attorneys for Plaintiff*