# CONSULTING AGREEMENT

This **CONSULTING AGREEMENT** ("Agreement") is dated March 18, 2019 ("Effective Date") by and between **Novel Energy Solutions, L.L.C.**, a Minnesota limited liability company ("Consultant" or "Novel"), and **Green Street Power Partners, LLC** a New York limited liability company ("Client"), collectively the "Parties" and each a "Party".

**NOW, THEREFORE** in consideration of the promises herein and for other good and valuable consideration, the Parties agree as follows:

1. **Services**: Consultant and Client agree Consultant will perform services associated with providing closing items, funding and financing assistance, assisting in due diligence activities, subscriber relationship management and pursuing landowner and subscriber estoppels all as reasonably requested by Client (such services, the "Services") in connection with Client obtaining tax and permanent financing related to Novel Solar One LLC, a Minnesota limited liability company (the "Held Project Company"), Novel Solar Five LLC, a Minnesota limited liability company (the "Imholte Project Company"), and Novel Solar Three LLC, a Minnesota limited liability company (the "Gibbon Project", and collectively with the Held Project Company and the Imholte Project Company, the "Project Companies" (and the solar projects collectively held by the Project Companies, the "Projects")).  The Services to be provided pursuant to this Agreement are intended by the Parties to be used by the Client solely in connection with the obtaining financing from tax and debt financing parties (the "Intended Purpose").

2. **Independent Contractor**:  Consultant is an independent contractor and is not an employee of Client. Services performed by Consultant under this Agreement are solely for the benefit of Client.  Nothing contained in this Agreement creates any duties on the part of Consultant toward any person not a party to this Agreement.

3. **Standard of Care**:  Consultant will perform services under this Agreement with the degree of skill and diligence normally practiced by consultants performing the same or similar services.  No other warranty or guarantee, expressed or implied, is made with respect to the Services furnished under this Agreement and all implied warranties with respect to the Services are disclaimed.  Further, Consultant makes no representations or warranties with respect to its Services related to the subscriptions for the Projects and no guarantee of outcome with respect to those Services.

4. **Changes/Amendments**:  This Agreement and its exhibits constitute the entire agreement between the Parties with respect to the Services and, together with its exhibits, supersede any prior written or oral agreements with respect to the Services.  This Agreement may not be changed except by written amendment signed by the Parties.  The estimate of the level of effort, schedule and payment required to complete the Services, as Consultant understands it, is reflected herein.  Services not expressly set forth therein are excluded.  Consultant shall promptly notify Client if changes to the Services affect the schedule, level of effort or payment to Consultant and the schedule and payment shall be equitably adjusted with the consent of Client.  If Consultant is delayed in performing its Services due to an event beyond its control, including but not limited to fire, flood, earthquake, explosion, strike, transportation or equipment delays, act of war, or act of God, then the payment under this Agreement shall be equitably adjusted in coordination and with the consent of Client, if necessary, to compensate Consultant for any additional costs due to the delay.

   If any change to the pricing, scope or schedule is determined by Consultant or Client to be needed with respect to the Services, this will be documented either by a formal written amendment or an email authorization.

5. **Fee for Services**:  The fee for Services reasonably requested by Client under this Agreement will be based on the reasonably documented costs incurred by Consultant in performing such services, which, if performed by Consultant's employees shall be invoiced to Client on a time-and-materials basis for an amount equal to the actual hours of the Services furnished, multiplied by Consultant's applicable hourly rates for the applicable employee performing such Services, plus a margin of 20%.  Expenses are additional and will be billed at cost.

   Exhibit A contains the applicable hourly rates applied to the performance of the Services—without application of the above-referenced margin.

6. **Payment**:  Client shall pay Consultant for time and materials (T&M) Services furnished under the Agreement at upon submission of monthly invoices for the fees discussed above.

   Client shall pay Consultant in U.S. dollars within ten (10) business days of receipt of invoices.

   **Advance Payments**.  Notwithstanding the foregoing, Client shall pay $20,000 within three (3) business days of signing as an advance payment, which shall be held by Consultant and applied to invoices submitted by Consultant for the Services provided.  Client agrees to make additional advance payments as and if required from time to time in Consultant's sole discretion.

7. **EPC Payment Acceleration**.  The following addresses the respective Solar Project Engineering, Procurement and Construction Agreements (each, an "EPC Contract") for the Imholte and Held Project Companies.  The Parties agree that notwithstanding the time periods set forth in Section 5.7 of each respective EPC Contract, that Client shall cause each of the Imholte and Held Project Companies to pay properly documented invoices submitted by the Contractor (as defined in each EPC Contract) within ten (10) business days after the receipt of each applicable Contractor invoice.

8. **Indemnity**:

   Client agrees to indemnify, defend and hold harmless Consultant and its directors, officers, shareholders, employees and subconsultants from and against any liability (including, without limitation, reasonable costs and attorney's fees) incurred by Consultant to the extent (a) caused by Client's negligent acts, errors or omissions, including judgments in favor of any third party or (b) related to any third-party claim arising from Consultant's performance of the Services.

   If Consultant provides Services at a construction site, Client agrees to shall indemnify and hold harmless Consultant from any and all loss, damage, claim, or liability (including, without limitation, reasonable attorneys' fees) incurred by Client or Consultant as a result of Consultant providing the Services; provided, however, that Consultant shall not be indemnified for any loss, damage, claim, or liability resulting solely from the negligent acts, errors, or omissions Consultant.

9. **Limitation of Liability:**  No employee of Consultant shall have individual liability to Client.  To the extent permitted by law, the total aggregate liability of Consultant, its officers, directors, shareholders, employees and subconsultants for any and all claims arising out of this Agreement, including attorneys' fees, and whether caused by negligence, errors, omissions, strict liability, breach of contract or contribution, or indemnity claims based on third party claims, shall not exceed in the aggregate, the revenue received by Consultant under this Agreement, except for any damages arising out of Consultant's gross negligence or willful misconduct.

10. **No Consequential Damages**:  In no event and under no circumstances shall Consultant be liable to the Client for any principal, interest, loss of anticipated revenues, earnings, profits, increased expense of operation or construction, loss by reason of shutdown or non-operation due to late completion or otherwise or for any other economic, consequential, indirect or special damages except for damages arising out of Consultant's gross negligence or willful misconduct.

11. **Information Provided by Others**: Client shall provide to Consultant in a timely manner any information Consultant indicates is needed to perform the services hereunder. Consultant may rely on the accuracy of information provided by Client and its representatives.

12. **Safety and Security**: Unless specifically included as a service to be provided under this Agreement, Consultant specifically disclaims any authority or responsibility for job site safety and safety of persons other than Consultant's employees. Consultant shall not provide any such services and disclaims any responsibility under this Agreement related to site security or the assessment, evaluation, review, testing, maintenance, operation or safety practices or procedures related to security.

13. **Termination**: Any Party may terminate this Agreement upon thirty (30) days prior written notice to the other Party(s). Client shall pay Consultant for all services rendered to the date of termination plus reasonable expenses for winding down the services.  Further, this Agreement shall terminate (following payment of all fees and expenses owing to Consultant) upon the final closing of tax equity financings for the Projects.

14. **Dispute Resolution**: The Parties shall attempt to resolve conflicts or disputes under this Agreement in a fair and reasonable manner and agree, if resolution cannot be made, to attempt to mediate the conflict by a professional mediator (except for payment disputes which may be submitted directly to arbitration). If mediation does not settle any dispute or action which arises under this Agreement or which relates in any way to this Agreement or the subject matter of this Agreement within ninety (90) days after either requests mediation, each of the Parties shall have all remedies available to them in law or at equity.

15. **Litigation Expenses:**  Client will be responsible for payment of all expenses and costs associated with Consultant's compliance with a subpoena or Client request to produce documents, data or testimony relating to any proceeding relating to any information pertaining to Client's project or to the work Consultant performed for Client, excluding any litigation or proceeding between Client and Consultant.  These costs will include hourly charges for persons involved in responding to a subpoena or Client request, travel and reproduction expenses, advice and participation of external counsel in responding to a subpoena and other request and other reasonable expenses.  Consultant will endeavor to confer with Client prior to responding to any subpoena or request covered by this paragraph.

16. **Miscellaneous**:

    a) This Agreement is binding upon and will inure to the benefit of the Parties and their respective successors and assigns.  No Party may assign its rights or obligations hereunder without the prior written consent of the other Party(s).

    b) The Parties expressly agree that all provisions of the Agreement were mutually negotiated and that but for the inclusion of the limitation of liability clause in the Agreement, Consultant's compensation for services would otherwise be greater and/or Consultant would not have entered into the Agreement.

    c) If any provision of this Agreement is invalid or unenforceable, the remainder of this Agreement shall continue in full force and effect and the provision declared invalid or unenforceable shall continue as to other circumstances.

    d) This Agreement shall be governed by, and construed in accordance with, the laws of the State of New York.

    e) In any action to enforce or interpret this Agreement, the prevailing Party shall be entitled to recover, as part of its judgment, reasonable attorneys' fees and costs from the other Party.

    f) This Agreement shall not be construed against Consultant only on the basis that Consultant drafted the Agreement.

    g) Notwithstanding any statute to the contrary, the Parties agree that any action to enforce or interpret this Agreement shall be initiated within two (2) years from the time the Party knew or should have known of the

fact giving rise to its action, and shall not in any case be initiated later than six (6) years after Consultant completes its Services under this Agreement.

h) This Agreement may be executed in multiple counterparts, each of which shall be deemed to be an original instrument, but all of which taken together shall constitute one instrument.

**IN WITNESS WHEREOF,** the Parties have signed this Agreement as of the date first written above.

**Novel**

Signature  *Cliff Kaehler*
Name       Cliff Kaehler
Title      CEO

**Green Street Power Partners, LLC**

Signature  *[signature]*
Name       Debi Galler
Title      General Counsel

4148-2054-5307.3

**Exhibit A**
**Hourly Billing Rates**

| Rate Class | Hourly Rate (US$) | Roles |
|:---:|:---:|:---:|
| 1 | 50 | Clerical, Administration, Junior Analysts and Technicians |
| 2 | 100 | Staff Consultants and Technicians |
| 3 | 200 | Senior Consultants and Technicians, Finance and Project Managers |
| 4 | 350 | Executive Team Members, Senior Project Managers, and Senior Staff |
| 5 | 400 | CEO, COO, CFO |