**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| NOVEL ENERGY SOLUTIONS, LLC, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Case No. 1:20-CV-05992-VSB-KHP |
| | : | |
| PINE GATE RENEWABLES LLC, *et al.*, | : | |
| | : | |
| Defendants. | : | |

**GREEN STREET POWER PARTNERS, LLC'S REPLY BRIEF**
**IN SUPPORT OF ITS MOTION TO DISMISS COMPLAINT**

## **TABLE TO CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

A.     Novel Concedes that Green Street Is Not a Proper Defendant ............................................ 1

B.     Novel Did Not Respond to Green Street's Argument That Novel Has An Adequate Remedy At Law and That Its Unjust Enrichment Claim Therefore Fails .......... 2

C.     Novel's Claim Fails Because Written Contracts Govern the Parties' Relationships ......... 3

D.     Novel's Unjust Enrichment Claim Fails Because Neither Green Street Nor its Affiliates Were Unjustly Enriched ............................................................................. 6

       1.    The Green Street Affiliated Entities were Not Unjustly Enriched ............................... 7

       2.    Novel Failed to Allege the Requisite Relationship ....................................................... 8

CONCLUSION ................................................................................................................. 10

## TABLE OF AUTHORITIES

**Cases**                                                                        **Pages(s)**

*Agerbrink v. Model Serv. LLC*,
 155 F. Supp. 3d 448 (S.D.N.Y. 2016) ................................................................................8

*Alaska Elec. Pension Fund v. Bank of Am. Corp.*,
 306 F. Supp. 3d 610 (S.D.N.Y. 2018) ..............................................................................10

*Charles Hyman, Inc. v. Olsen Indus., Inc.*,
 227 A.D.2d 270, 642 N.Y.S.2d 306 (1996) ........................................................................5

*Corsello v. Verizon New York, Inc.*,
 18 N.Y.3d 777, 967 N.E.2d 1177 (2012) .......................................................................5, 6

*General Star Indem. Co. v. Driven Sports, Inc.*,
 80 F. Supp. 3d 442, 445-46 (E.D.N.Y. 2015) .....................................................................5

*Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*,
 418 F.3d 168, 175-76 (2d Cir. 2005) ..................................................................................5

*Mtume v. Sony Music Entertainment*,
 No. 18 CIV. 6037(ER), 2020 WL 4895360 (S.D.N.Y. Aug. 19, 2020) ..............................9

The law is clear that an unjust enrichment claim cannot stand when the plaintiff has an adequate legal remedy or when a contract governs the subject matter of the dispute.  In one breath, Novel asserts in its opposition brief that a contract "clearly" applies and requires Pine Gate to pay money damages for the interconnection fees at issue.  In the next breath, Novel then attempts to save its unjust enrichment claim against Green Street by disingenuously arguing that the "scope" of that contract does not cover the interconnection refund.  Novel's attempt to assert an unjust enrichment claim as a backstop if it loses on its argument that it has a contract entitling it to an interconnection refund is entirely without basis.  Equally as baseless is Novel's argument that Green Street (or any of its affiliated entities) somehow received a "windfall" or was "unjustly" enriched when the project company that was supposed to receive the interconnection refund from the utility company actually did receive one.  Accordingly, as explained below, Green Street's motion to dismiss Counts II and III of Novel's Complaint should be granted.[1]

**A.      Novel Concedes that Green Street Is Not a Proper Defendant.**

Green Street explained in its opening memorandum that it is not a proper defendant as it neither owns any membership interest in Novel Solar One, LLC (the project company) nor is in possession of the refund that Novel is seeking.  (Dkt. 16, p. 6.)  In its opposition, Novel does not address this argument, except to state in a footnote that "Novel will file an amended complaint naming [GSPP Holdco, LLC and GSPP Capital, LLC] as defendants.  All other allegations as to Green Street will remain the same."  (Dkt. 18, p. 1, fn. 1.)

Thus, Novel does not contest – and cannot in good faith contest – that Novel improperly named Green Street as a defendant and that its claims against Green Street should be dismissed with prejudice.  Upon receiving the motion to dismiss, Novel should have promptly dismissed its claims against Green Street.  But Novel has not done so.  Accordingly, Green Street requests that

---

[1] All capitalized terms shall have the same meaning as set forth in Green Street's opening brief (Dkt. 16).

the Court grant its motion to dismiss Novel's claims with prejudice.

Further, Novel states in its footnote that "Green Street states in its motion to dismiss that the parties that received the refund at issue are GSPP Holdco, LLC and GSPP Capital, LLC." (Dkt. 18, p. 1, fn. 1.)  Novel's assertion is incorrect.  Green Street stated no such thing.  Rather, Green Street stated that GSPP Holdco, LLC and GSPP Capital, LLC purchased PGR Lessor K, LLC's membership interests in Novel Solar One, LLC.  (Dkt. 16, p. 6.)  Of course, the project company itself – Novel Solar One, LLC – is the entity that received the refund from Xcel Energy.  Novel's continued disregard for the corporate form is no basis to amend its complaint to purportedly sue companies that acquired membership interests in Novel Solar One back in 2018.[2]

In any event, regardless of which Green Street affiliated entity Novel might try to name next, any such amendment would be futile.  As explained in Green Street's opening brief and further below, Novel's unjust enrichment theory fails as a matter of law.

**B.      Novel Did Not Respond to Green Street's Argument That Novel Has An Adequate Remedy At Law and That Its Unjust Enrichment Claim Therefore Fails.**

As explained in Green Street's opening brief, Novel's unjust enrichment claim fails as a matter of law because Novel has an adequate remedy at law.  (Dkt. 16, pp. 6-7.)  Citing cases from the Second Circuit and this Court dismissing unjust enrichment claims when the plaintiff had such an available remedy, Green Street explained that Novel has such a remedy through its contractual claim against Pine Gate seeking recovery of the exact same money damages as its unjust enrichment claim.  (*Id.*)  Novel's opposition not only tacitly concedes this point by failing to address it, but it actually reaffirms in its very first paragraph that Novel's claims arise from the

---

[2] Notably, GSPP Capital, LLC no longer owns any membership interest in Novel Solar One, and GSPP Holdco, LLC only ultimately owns a very small percentage at present.

"failure to reimburse Novel for its overpayment of an interconnection utility fee as required by the Membership Interest Purchase Agreement (the "Agreement") executed by Novel and Pine Gate on February 2, 2018. (Dkt. 18, p. 1.) In other words, Novel asserts a quintessential legal claim (based in contract) seeking the quintessential legal remedy (money damages). Novel cannot simultaneously state an equitable claim for unjust enrichment alongside such an available legal remedy. Green Street's motion to dismiss should be granted on this ground alone.

C.      **Novel's Claim Fails Because Written Contracts Govern the Parties' Relationships.**

Green Street also explained that, pursuant to established New York case law, Novel's unjust enrichment claim is precluded because the parties' respective relationships, rights, and obligations regarding the project company (Novel Solar One, LLC) and the Held Project are all defined by detailed written contracts. (Dkt. 16, pp. 8-11) (citing numerous cases). In response, Novel argues that its unjust enrichment claim can survive because the "scope" of the contracts is in dispute. (Dkt. 18, pp. 14-16.) Specifically, Novel argues that, because Pine Gate disputes that it owes the interconnection refund to Novel under the terms of the Novel-Pine Gate MIPA, Novel should be permitted to alternatively assert an unjust enrichment claim against a completely different party (Green Street). (*Id.*)

The very premise of Novel's argument – that the *scope* of the contract does not address the issue – is entirely baseless. The dispute relates to alleged reimbursement of interconnection fees that Novel claims it paid on behalf of Novel Solar One. In a section entitled "Interconnection Reimbursement," the Novel-Pine Gate MIPA contains the following provision directly covering reimbursement of such fees by Pine Gate to Novel, stating:

> On the Execution Date, Buyer [Pine Gate] shall pay to Seller [Novel] the amounts set forth on Exhibit D for the Projects, which amounts which have been paid, posted or abated by Seller [Novel] on behalf of the applicable Project Company in connection with the applicable Interconnection Agreement and all related interconnection expenses for the applicable Projects prior to the Execution Date

>for such Project (each, an **"Interconnection Reimbursement"**).  Such Interconnection Reimbursement payment shall be made by Buyer [Pine Gate] to Seller [Novel] by wiring the applicable amount in immediately available funds to the account, or accounts, specified by Seller [Novel] in writing at least two (2) Business Days prior to the Execution Date ….

(Dkt. 1-1, Section 2.2(a).)  The "scope" of this provision unquestionably addresses reimbursement of the fee at issue in this case.  Indeed, the Exhibit D referenced in Section 2.2 specifically lists the Interconnection Reimbursement amount for the Held Project as $618,005, which is the same amount alleged by Novel in its Complaint.  (*Compare* Dkt. 1-1 at Exhibit D, *with* Compl., ¶¶ 15, 16, 18, 25.)  Thus, there can be no legitimate dispute that the *scope* of the contract addresses the exact subject matter of this case (*i.e.*, interconnection reimbursement for the Held Project).  This is evidenced by the fact that, in its opposition to the motions to dismiss, Novel asserts that the contract "clearly so provides" that the contract required Pine Gate to pay the Interconnection Refund to Novel.  (Dkt. 18, p. 8.)  Novel cannot, on the one hand, argue that the contract "clearly" provides that the Interconnection Refund is owed and, on the other hand, simultaneously argue that the *scope* of the contract does not even cover the subject matter of the Interconnection Refund.

In reality, Novel is not actually arguing that the *scope* of the contract does not address the interconnection reimbursement; in fact, it essentially states the opposite.  Rather, Novel is actually suggesting that if its interpretation of the contract is wrong and it is *not* contractually entitled to the refund from Pine Gate, then it should still be able to pursue an unjust enrichment claim against Green Street.  (*See* Dkt. 18, pp. 15-16.)  Novel's argument is not merely wrong; it is absurd.  Detailed contracts between the parties specifically address Novel's right (or not) to receive an interconnection reimbursement.  Novel cannot *lose* on its claimed right to a refund under that contract – *i.e.*, the contract does not require such payment – and yet somehow still be entitled to payment of that same refund from a third party through an unjust enrichment claim.

4

As the cases cited by Novel clearly state, "unjust enrichment is not a catchall cause of action to be used when others fail." *Corsello v. Verizon New York, Inc.*, 18 N.Y.3d 777, 790, 967 N.E.2d 1177 (2012); *see also Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 175–76 (2d Cir. 2005) (stating entitlement to quantum meruit may depend on showing that "additional services are so distinct from [contractual] duties"). A plaintiff's unjust enrichment claim fails on its face "where it simply duplicates, or replaces, a conventional contract or tort claim." *Corsello*, 18 N.Y.3d at 790, 967 N.E.2d 1177. For example, an unjust enrichment claim should be dismissed where "[t]o the extent that [its other] claims succeed, the unjust enrichment claim is duplicative [or] if plaintiffs' other claims are defective, an unjust enrichment claim cannot remedy the defects." *Corsello*, 18 N.Y.3d at 791, 967 N.E.2d 1177; *see also Charles Hyman, Inc. v. Olsen Indus., Inc.*, 227 A.D.2d 270, 642 N.Y.S.2d 306, 311 (1996) ("A party will not be relieved of the consequences of his own failure to proceed with diligence or to exercise caution with respect to a business transaction" through application of an unjust enrichment theory); *General Star Indem. Co. v. Driven Sports, Inc.*, 80 F. Supp. 3d 442, 445-46 (E.D.N.Y. 2015) ("However, unjust enrichment claims are generally precluded under New York law where the contract addresses the particular subject matter at issue …. The Court will not, in essence, create that recoupment agreement and re-write the Policy by relying on a quasi-contract theory ….").

Novel's claim against Green Street is the exact type of claim that New York law recognizes as an improper "alternative" claim. This is not a situation in which the validity of the contract is in question or the *scope* of the contract does not address the issue. Instead, the subject matter (interconnection reimbursement) is indisputably addressed by the contract – whether Novel likes the result or not. If Novel is successful in its claim against Pine Gate, its "equitable"

5

claim against Green Street would be duplicative. If Novel is not entitled to the interconnection refund under the contract, then there is no "common law" right to reimbursement for something to which Novel is not contractually entitled. Either way, the purported unjust enrichment claim is precluded due to the existence of a written contract covering the subject matter of the dispute. For this additional reason, the Court should grant Green Street's motion and dismiss Novel's unjust enrichment claim. *See Corsello*, 18 N.Y.3d at 791, 967 N.E.2d 1177.[3]

### D.  Novel's Unjust Enrichment Claim Fails Because Neither Green Street Nor its Affiliates Were Unjustly Enriched.

Lastly, Green Street moved to dismiss Novel's unjust enrichment claim because there simply was no "unjust" enrichment of Green Street or any affiliated company. (Dkt. 16, pp. 11-13.) The Green Street affiliated entities merely acquired ownership of Novel Solar One's membership interests and did nothing unjust *vis-a-vis* Novel. (*Id.*) Xcel Energy determined that Novel Solar One was entitled to a refund related to the solar project it owns. (*Id.*) Novel Solar One did not enter any contract in which it agreed to make any payment to Novel regarding the interconnection fee, nor did the Pine Gate-GSPP MIPA or the Consulting Agreement require Green Street to do so. (*Id.*) Neither Green Street nor any of its affiliated entities could possibly have done something (never identified by Novel) to have induced Novel into paying the estimated interconnection fees many months before the Green Street affiliated entities purchased the membership interests of Novel Solar One. (*Id.*)

Novel makes two arguments in its opposition. It first argues that this is a "typical" case of unjust enrichment because Green Street received a "windfall" it had not bargained for or

---

[3] As noted in footnote 4 of Green Street's opening brief, the Novel-Pine Gate MIPA attached to Novel's Complaint demonstrates that Novel has already been reimbursed for the entire amount of the interconnection fee, which is an additional and independent ground for dismissal of Novel's Complaint. (Dkt. 16, p. 11, fn. 4.) Pine Gate argued the same in its motion to dismiss. (Dkt. 12.) Novel makes certain arguments in its opposition on this issue in response to Pine Gate's motion. (Dkt. 18, pp. 7-11.) Green Street anticipates that Pine Gate will reply to Novel's arguments relating to the Novel-Pine Gate MIPA, to which Green Street was not a party.

earned. (Dkt. 18, pp. 2, 12-13, 16-17.)  Novel then argues that the absence of the parties having a close relationship is no impediment to its claim here. (*Id.*, pp. 17-18.)  As explained below, each of these arguments is meritless.

      **1.**      **The Green Street Affiliated Entities were Not Unjustly Enriched.**

There was no "windfall" or *unjust* enrichment for Novel Solar One (or its parent company) to retain the interconnection refund issued by Xcel Energy.  On the contrary, the Green Street affiliated entities fairly received and retained the interconnection fee refund pursuant to their own negotiated contractual rights.  Under the Pine Gate-GSPP MIPA, the Green Street affiliated entities paid good and valuable consideration to purchase 100% of the ownership interests in Novel Solar One.  (*See* Dkt. 15-1.)  That purchase of 100% ownership obviously comes with whatever assets the LLC owns, including any right to a payment from a third party (*e.g.*, Xcel Energy).  The right to own such assets – including any payables from third parties – was the benefit of the bargain that the Green Street affiliated entities negotiated in exchange for the substantial "Project Purchase Price" they paid. (*Id.*)  The Green Street affiliated entities did not just "happen" to stumble onto the interconnection refund from the utility company; rather, they were entitled to any such refund because they purchased 100% of the project company for a negotiated purchase price. (*Id.*)

Nowhere did the purchase of 100% ownership of Novel Solar One carve out or exclude the right to any payment that the utility company (Xcel Energy) may make to Novel Solar One in connection with the solar garden or obligate the Green Street affiliates to make any payment whatsoever to Novel. (*Id.*)  If the Pine Gate-GSPP MIPA would have done so, then the purchase price would obviously have been adjusted accordingly.

In fact, the plain terms of the Pine Gate-GSPP MIPA demonstrate this very bargain.  On top of the obligation to transfer 100% of the LLC membership interests to GSPP Holdco, LLC

and GSPP Capital, LLC, the Pine Gate-GSPP MIPA included a "Fundamental Representation" from Pine Gate providing that there were no "monetary Liabilities of the Project Company [Novel Solar One] relating to, or incurred during the period prior to the Closing, including any monetary obligations that are not to be paid until after Closing, that will not be paid at Closing or that will otherwise survive Closing" and that the "Project Company [Novel Solar One] does not have any liabilities owing to Novel Energy Solutions, L.L.C. or MN Community Solar LLC under" the Novel-Pine Gate MIPA. (*Id.*, § 4.27.) In other words, a fundamental part of the Green Street affiliates' acquisition of ownership of Novel Solar One was that Novel Solar One did *not* owe any liabilities to its former owner (Novel).[4]

Simply put, there was no "windfall" or "unjust" enrichment of Novel Solar One or any Green Street affiliated entity. The Green Street affiliates received the benefit of their bargain in purchasing the ownership interests in Novel Solar One, and simply alleging that Green Street benefitted through the receipt of the interconnection refund is wholly insufficient to state a viable "unjust" enrichment claim. *See Agerbrink v. Model Serv. LLC*, 155 F. Supp. 3d 448, 458 (S.D.N.Y. 2016) ("Simply claiming that the defendant received a benefit is insufficient to establish a cause of action for unjust enrichment . . . a plaintiff must also demonstrate that the defendant should have to compensate the plaintiff for the benefit conferred . . . .").

### 2. Novel Failed to Allege the Requisite Relationship.

Novel's argument that it is not required to allege, but has in fact alleged, a "sufficiently

---

[4] In a footnote, Novel argues that Section 4.27 (mistakenly referred to by Novel as Section 4.26) of the Pine Gate-GSPP MIPA does not "entitle" Green Street to the interconnection refund because "[i]t says nothing about an entitlement to a refund that had not yet been issued." (Dkt. 18, p. 16, fn. 4.) Novel has it exactly backwards. By purchasing 100% of the ownership of Novel Solar One, the Green Street affiliates acquired *all* of the assets of Novel Solar One, including the right to any future payments that Novel Solar One may receive. The Pine Gate-GSPP MIPA contains no exclusion of an interconnection refund from the acquisition of all of the assets. The Green Street affiliates then negotiated even further protection against any potential assertion that any liabilities or monies were owed to Novel Solar One's former owner (Novel) through the Fundamental Representation by Pine Gate set forth in Section 4.27 of the Pine Gate-GSPP MIPA.

close relationship" between Novel and Green Street is incorrect on both points. Novel relies on *Mtume v. Sony Music Entertainment*, No. 18 CIV. 6037(ER), 2020 WL 4895360 (S.D.N.Y. Aug. 19, 2020), for the notion that its claim here involves a "more quintessential form of unjust enrichment" that does not require there to be a sufficiently close relationship between Novel and Green Street. (Dkt. 18, p. 17.) But *Mtume* does not stand for any such proposition and, in fact, that case does not even address the closeness of any relationship or the lack thereof. Novel's argument that a sufficiently close relationship is not needed to prove unjust enrichment where the defendant, through no fault of its own, received money it was purportedly not owed, is offered without any authority. *Id.* Rather, in *Mtume*, the court declined to dismiss the unjust enrichment counterclaim because the plaintiff/counter-defendant had allegedly received inadvertent payments directly from the defendant/counter-plaintiff. *Id.* at *6. In other words, *Mtume* concerned a direct relationship between the parties and the "benefit" was conferred directly from the defendant/counter-plaintiff to the plaintiff/counter-defendant.

In stark contrast to *Mtume*, Novel and Green Street had no such relationship and Novel conferred no such benefit to Green Street. On the contrary, Novel paid the interconnection fees at issue to Xcel Energy (not Green Street) many months before the Green Street affiliated entities even "arrived on scene." All the Green Street affiliated entities did was later purchase the membership interests in Novel Solar One (which Novel had chosen to sell to Pine Gate). In the absence of a sufficiently close relationship (or any authority suggesting one is not necessary here), Novel cannot state an unjust enrichment claim against Green Street.

Finally, Novel makes a half-hearted, one-sentence argument that there was a "sufficiently close relationship" because Green Street was (allegedly) aware of Novel's agreement with Pine Gate and the Interconnection Reimbursement requirement. (Dkt. 18, pp. 17-18.) As discussed in

its opening brief (Dkt. 16, p. 13), even if it were true that Green Street became aware of the terms of the Novel-Pine Gate MIPA, Novel fails to allege how such awareness could have possibly caused any reliance by or inducement of Novel when the Pine Gate-GSPP MIPA clearly shows that the latter did not assume any obligation to refund Novel for any such fees received. At most, Novel's allegation would lead to the inference that Green Street was aware that *Pine Gate* had an obligation to make (or had already made) an interconnection reimbursement payment to Novel. It does nothing to establish that Green Street and Novel had a sufficient relationship to warrant Novel's unjust enrichment claim. *See Alaska Elec. Pension Fund v. Bank of Am. Corp.*, 306 F. Supp. 3d 610, 625 (S.D.N.Y. 2018) (unjust enrichment claimed failed because plaintiff failed to plead sufficiently close relationship).

## CONCLUSION

For the reasons set forth above and in Green Street's opening memorandum, Green Street respectfully requests that the Court dismiss Count II and Count III with prejudice.

Dated:  September 16, 2020                                Respectfully submitted,

**GREEN STREET POWER PARTNERS, LLC**

By:   /s/ *Noam Besdin*
             Noam Besdin

Aron Frakes (*pro hac vice* forthcoming)      Noam Besdin
FREDRIKSON & BYRON, P.A.                         AMINI LLC
200 South Sixth Street, Suite 4000              131 West 35th Street, 12th Floor
Minneapolis, MN  55402                           New York, New York 10001
(612) 492-7000                                   (212) 490-4700
afrakes@fredlaw.com                              nbesdin@aminillc.com

10