UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
:
NOVEL ENERGY SOLUTIONS, LLC,                              :
:
                              Plaintiff,  :
:           20-cv-5992 (VSB)
        - against -                                  :
:       **OPINION & ORDER**
:
PINE GATE RENEWABLES, LLC, et al.,                        :
:
                            Defendants.  :
:
------------------------------------------------------------X

Appearances:

Stephen Joseph Riccardulli
Holland & Knight LLP
New York, NY
*Counsel for Plaintiff*

Mark Finkelstein
Fox Rothschild, LLP
Raleigh, NC
*Counsel for Defendant Pine Gate Renewables, LLC*

Aron Frakes
Fredrikson & Byron P.A.
Minneapolis, MN

Noam Besdin
Stein Adler Dabah & Zelkowitz LLP
New York, NY
*Counsel for Defendants Green Street Power Partners; GSPP HoldCo, LLC; GSPP Capital, LLC*

VERNON S. BRODERICK, United States District Judge:

      Plaintiff Novel Energy Solutions, LLC ("Plaintiff" or "Novel") brings this action asserting a breach of contract claim against Defendant Pine Gate Renewables, LLC ("Pine Gate"), and asserting an unjust enrichment claim against Defendants Green Street Power

Partners; GSPP Holdco, LLC; and GSPP Capital, LLC (collectively, "Green Street"). Pine Gate and Green Street have each separately moved to dismiss the claims against them. Because Plaintiff fails to establish subject matter jurisdiction, this matter is DISMISSED with prejudice because I find amendment would be futile, and the motions to dismiss of Pine Gate and Green Street are DENIED as moot.

## I. Factual Background and Procedural History[1]

This dispute concerns a contract for the sale of a solar energy project in Minnesota. (*See generally* Doc. 20 ("Am. Compl.").) On February 2, 2018, Plaintiff Novel, a Minnesota LLC, sold its interest in four limited liability partnerships to Defendant Pine Gate, a North Carolina LLC. (*See id.* ¶¶ 8, 9, 16.) The parties' Membership Interest Purchase Agreement is attached to the Amended Complaint as Exhibit A. (Doc. 20-1 ("Novel-Pine Gate Agreement").) One of the four limited liability partnerships that Novel sold was Novel Solar One LLP ("Solar One"), which owned the Held Project Company (the "Held Project"). (*See* Am. Compl. ¶ 16(b).) The Held Project is "an approximately 5 MWDC photovoltaic solar energy project in St. Cloud, Minnesota." (*Id.*)

This lawsuit concerns whether Novel is entitled to a refund associated with the Held Project. Before construction began on each solar project, the local utility company Xcel Energy ("Xcel") required a deposit for "the estimated cost of connecting the Projects to the power grid" (the "Interconnection Fee"). (*Id.* ¶¶ 17, 18.) The Interconnection Fee for the Held Project was $618,005. (*Id.* ¶ 17(b).) Although the contract governing the Held Project's Interconnection Fee was between Xcel and Solar One (the "Interconnection Agreement"), Novel paid the $618,005

---

[1] The facts set forth herein are taken from allegations in the Amended Complaint. (*See generally* Am. Compl.) I assume Plaintiff's allegations in the Amended Complaint to be true for purposes of the motion. *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007). However, my reference to these allegations should be not construed as a finding as to their veracity, and I make no such findings.

2

fee to Xcel on Solar One's behalf, (*see id.* ¶ 18; *see also* Novel-Pine Gate Agreement § 2.5(b); *id.* Sch. 4.3). When Novel sold Solar One to Pine Gate, the parties agreed that, on the contract execution date, Pine Gate would reimburse Novel for each Interconnection Fee that Novel had previously paid to Xcel. (Am. Compl. ¶ 20.) Specifically, Section 2.2(a) says:

> **Interconnection Reimbursement**. On the Execution Date, Buyer [Pine Gate] shall pay to Seller [Novel] the amounts set forth on Exhibit D for the Projects, which amounts which have been paid, posted or abated by Seller [Novel] on behalf of the applicable Project Company in connection with the applicable Interconnection Agreement and all related interconnection expenses for the applicable Projects prior to the Execution Date for such Project (each, an "***Interconnection Reimbursement***").

(Novel-Pine Gate Agreement § 2.2(a) (emphases in original).) However, Section 1.1 also provided that Pine Gate would subtract the Interconnection Reimbursement—and "any additional interconnection costs"—from the final purchase price. (Am. Compl. ¶ 20.) Specifically, Section 1.1 says:

> "***Project Closing Payment***" means, with respect to each Project Company, an amount equal to the Project Price for such Project Company *minus* (a) . . . and (b) the amount of (i) the Interconnection Reimbursement paid by Buyer [Pine Gate] to Seller [Novel] and (ii) any additional interconnection costs solely with respect to distribution, telemetry or the substation (or otherwise in connection with any updated interconnection packet prepared by Xcel Energy) that are received from Xcel Energy and paid by Buyer [Pine Gate] following the Execution Date, for such Project Company.

(Novel-Pine Gate Agreement § 1.1, "Project Closing Payment" (emphasis in original).) Although Pine Gate was to reimburse Novel for its payments to Xcel, Novel would still bear the cost of connecting the project to the grid, since the Interconnection Fee and any additional interconnection costs would be factored into Pine Gate's purchase price.

The Novel-Pine Gate Agreement has a merger clause, which says that the contract and its associated documents "contain the sole and entire agreement between the Parties hereto with respect to the subject matter hereof." (*Id.* § 9.2.) Both parties were represented by counsel

3

during the negotiation of the Novel-Pine Gate Agreement. (*See id.* § 1.2(g) ("Each Party acknowledges that it and its attorneys have been given an equal opportunity to negotiate the terms and conditions of this Agreement.")).

In March 2019, over a year after the execution of the Novel-Pine Gate Agreement, Pine Gate informed Novel that Defendant Green Street—a New York LLC and its affiliates—had agreed to buy the four solar projects from Pine Gate. (*See* Am. Compl. ¶¶ 10–12, 22.) Novel did not attach Green Street's purchase agreement to the Amended Complaint, but Green Street separately filed the contract as an exhibit in connection with its motion to dismiss. (Doc. 45-1 ("Pine Gate-Green Street Agreement").) The Pine Gate-Green Street Agreement provides that the Interconnection Agreement between Xcel and Solar One is a "material contract" that "shall be in full force and effect." (*Id.* §§ 2.4(b); 4.14(a)(i), (c).) Novel also entered into its own consulting agreement with Green Street, to "assist[] Green Street in its purchase of the Projects from Pine Gate by providing services related to closing items, funding, due diligence and related issues." (Am. Compl. ¶ 23.) Novel's contract with Green Street is attached to the Amended Complaint as Exhibit B. (Doc. 20-2 ("Novel-Green Street Agreement").)

In June 2019, some 16 months after the execution of the Novel-Pine Gate Agreement, the Held Project was connected to the power grid. (*See* Am. Compl. ¶ 27.) Ultimately, the interconnection cost was only $202,747.50, not the estimated $618,005 that Novel had paid. (*See id.*) As a result, Xcel issued a $415,275.50 refund to Green Street. (*See id.*)[2] Novel argues that "the parties agreed that Pine Gate would return to Plaintiff any Interconnection Refund received from Xcel if the estimated Interconnection Fee was higher than the actual cost of the interconnection." (*Id.* ¶ 21.) Novel does not cite any provision of the Novel-Pine Gate

---

[2] *See infra* footnote 5.

4

Agreement upon which this assertion is based.  (*See generally id.*)

Another one of the four solar projects that Novel sold to Pine Gate was a "1.498 MWDC photovoltaic solar energy project in St. Cloud, Minnesota" called the "Imholte Project."  (*See id.* ¶ 16(c).)  The Imholte Project was connected to the power grid on April 16, 2019.  (*See id.* ¶ 25.)  Like with the Held Project, Xcel overestimated the interconnection cost for the Imholte Project, and so Xcel issued a refund to Pine Gate for $182,868.  (*See id.*)  Pine Gate transferred the $182,868 refund for the Imholte Project to Novel.  (*See id.*)  Novel argues, "This course of dealing with the Imholte Project confirmed the parties' Agreement and makes clear that the refund at issue here should have been returned to Plaintiff."  (*Id.* ¶ 4.)

On April 24, 2020, Novel demanded that both, or either, Pine Gate and/or Green Street pay Novel the $415,275.50 refund that Xcel had issued for the Held Project.  (*See id.* ¶¶ 28, 29.)  Both Pine Gate and Green Street refused.  (*See id.*)  On July 31, 2020, Novel brought this lawsuit.  (Doc. 1.)  On August 26, 2020, both Pine Gate and Green Street moved to dismiss.  (Docs. 11, 14.)

On September 16, 2020, Novel filed an Amended Complaint, which is the operative complaint in this case.  (Am. Compl.)  Novel asserts a breach of contract claim against Pine Gate, (*see id.* ¶¶ 32–39), and asserts an unjust enrichment claim against Green Street, (*see id.* ¶¶ 40–44).[3]  On September 28, 2020, Pine Gate moved to dismiss the Amended Complaint, (Doc. 40), and filed a memorandum of law in support, (Doc. 41 ("Pine Gate's Mem.")).  On October 13, 2020, Novel filed an opposition.  (Doc. 47 ("Pl.'s Pine Gate Opp.").)  On October 20, 2020, Pine Gate filed a reply.  (Doc. 48 ("Pine Gate's Reply").)  On October 13, 2020, Green Street

---

[3] Count II is for declaratory judgment against Green Street.  (Am. Compl. ¶¶ 45–50.)  Declaratory judgment is not "an independent cause of action."  *In re Joint E. & S. Dist. Asbestos Litig.*, 14 F.3d 726, 731 (2d Cir. 1993).  Therefore, I consider Novel's allegations as to declaratory judgment as incorporated into its allegations related to unjust enrichment.

5

also moved to dismiss the Amended Complaint, (Doc. 44), and filed a memorandum of law in support, (Doc. 46 ("Green Street's Mem.")).  On October 27, 2020, Novel filed an opposition. (Doc. 51 ("Pl.'s Green Street Opp.").)  On November 3, 2020, Green Street filed a reply.  (Doc. 52 ("Green Street's Reply").)

## II.     Legal Standards

### A.     *Diversity Jurisdiction*

"It is a fundamental precept that federal courts are courts of limited jurisdiction and lack the power to disregard such limits as have been imposed by the Constitution or Congress." *Durant, Nichols, Houston, Hodgson, & Cortese-Costa, P.C. v. Dupont*, 565 F.3d 56, 62 (2d Cir. 2009) (internal quotation marks omitted.)  "For diversity jurisdiction to exist, there must be 'complete diversity' of citizenship between the plaintiff and the defendants, and the amount in controversy must exceed $75,000."  *Freeman v. Stake.com*, No. 22-CV-7002 (RA), 2023 WL 4187574, at *3 (S.D.N.Y. June 26, 2023).  Courts have "an independent obligation to consider the presence or absence of subject matter jurisdiction sua sponte."  *Joseph v. Leavitt*, 465 F.3d 87, 89 (2d Cir. 2006); *Lyndonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 700 (2d Cir. 2000).  It is the Plaintiff's burden to establish subject matter jurisdiction.  *See Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008), *aff'd*, 561 U.S. 247 (2010).

### B.     *Federal Rule of Civil Procedure 12(b)(6)*

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is

6

liable for the misconduct alleged." *Id.*  This standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.*  "Plausibility . . . depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011).

In considering a motion to dismiss, a court must accept as true all well-pleaded facts alleged in the complaint and must draw all reasonable inferences in the plaintiff's favor. *Kassner*, 496 F.3d at 237.  "A complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016) (internal quotation marks omitted).  A complaint need not make "detailed factual allegations," but it must contain more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  Finally, although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Id.*

### III.   Discussion

#### A.   *Diversity Jurisdiction*

In the Amended Complaint, Plaintiff pleads that I have jurisdiction due to "complete diversity of citizenship between the parties."  (Doc. 20 ¶ 13.)  All of the parties are limited liability companies.  (Doc. 20 ¶¶ 8-12.)  Specifically, Plaintiff "is a limited liability company formed in the State of Minnesota with its corporate headquarters located at 2303 Wycliff Street, Suite 300, Saint Paul, MN 55114."  (Doc. 20 ¶ 8.)  Similarly, for each Defendant LLC, Plaintiff only describes its state of formation and the location of their corporate headquarters.  (Doc. 20 ¶¶ 9-12.)

"For purposes of diversity jurisdiction, a limited liability company is deemed to be a citizen of each state of which its members are citizens." *All Premium Contractors Inc. v. Sunlight Fin. LLC*, No. 1:23-CV-05059 (JLR), 2023 WL 4187444, at *1 (S.D.N.Y. June 26, 2023). "The place of incorporation and principal place of business of a limited liability company is not relevant to determining citizenship for diversity jurisdiction." *Id.* Accordingly, because Plaintiff fails to identify the citizenship of the members of the limited liability companies who are parties to this lawsuit, Plaintiff fails to meet its burden to show that I have subject matter jurisdiction. *See Shi v. Gateno*, No. 23-CV-5349 (LTS), 2023 WL 4472597, at *3 (S.D.N.Y. July 10, 2023).

Although "a plaintiff may cure defective jurisdictional allegations, unlike defective jurisdiction itself, through amended pleadings," *Fund Liquidation Holdings LLC v. Bank of Am. Corp.*, 991 F.3d 370, 389 (2d Cir. 2021), leave to amend should not be granted when amendment would be futile, *Biswas v. Rouen*, 808 F. App'x 53, 55 (2d Cir. 2020); *Baroni v. Port Auth. of New York & New Jersey*, No. 21-CV-5961-LTS, 2023 WL 4029343, at *7 (S.D.N.Y. June 15, 2023). For the reasons explained below, I find that leave to amend would be futile.

### B. *Breach of Contract*

Under New York law,[4] a plaintiff claiming a breach of contract must allege: "(i) the formation of a contract between the parties; (ii) performance by the plaintiff; (iii) failure of defendant to perform; and (iv) damages." *Orchard Hill Master Fund Ltd. v. SBA Commc'ns*

---

[4] Novel alleges that pursuant to the Novel-Pine Gate Agreement, New York law governs this action. (*See* Am. Comp. ¶¶ 30, 31 (citing Agreement § 9.12).) Pine Gate does not appear to dispute that New York law governs. (*See generally* Pine Gate's Mem. (citing New York law throughout).) Green Street, however, notes that "Green Street is not a party" to the Agreement between Novel and Pine Gate. (Green Street's Mem. 9 n.3.) Green Street therefore "assume[s] that New York law applies to Novel's claims," if only "for purposes of this motion," but "reserves the right to argue that Minnesota law may apply to Novel's claims against it, which is where the solar garden project at issue is located and where Novel Solar One was formed." (*Id.*) Hearing no argument to the contrary, I apply New York law to Novel's state law claims for purposes of this motion.

8

*Corp.*, 830 F.3d 152, 156 (2d Cir. 2016) (quoting *Orlander v. Staples, Inc.*, 802 F.3d 289, 294 (2d Cir. 2015)).  A court's primary objective in interpreting a contract "is to give effect to the intent of the parties as revealed by the language of their agreement." *Compagnie Financiere de CIC et de L'Union Europeenne v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 232 F.3d 153, 157 (2d Cir. 2000); *see also Greenwich Capital Fin. Prods., Inc. v. Negrin*, 74 A.D.3d 413, 415 (1st Dep't 2010) (noting that courts are bound to construe the terms of a contract "in a manner that accords the words their fair and reasonable meaning, and achieves a practical interpretation of the expressions of the parties" (internal quotation marks omitted)).

A district court may dismiss a breach of contract claim at the motion-to-dismiss stage only where "the terms of the contract are unambiguous." *Orchard Hill*, 830 F.3d at 156.  A contract is ambiguous "if its terms could suggest more than one meaning when viewed objectively by a reasonably intelligent person" familiar with the context of the agreement and the business it concerns. *Chesapeake Energy Corp. v. Bank of N.Y. Mellon Tr. Co.*, 773 F.3d 110, 114 (2d Cir. 2014) (internal quotation marks omitted).  There is no ambiguity "where the contract language has a definite and precise meaning." *Id*.

The contract here is unambiguous.  Novel was entitled to one "refund," the so-called Interconnection Reimbursement described in Section 2.2(a) of the Novel-Pine Gate Agreement.  Specifically, on the day the contract was executed, Pine Gate was required to pay Novel "the amounts . . . which have been paid, posted or abated by [Novel] on behalf of the [Held Project] in connection with the applicable Interconnection Agreement and all related interconnection expenses for the [Held Project] prior to the Execution Date. . . ." (Novel-Pine Gate Agreement § 2.2(a).)  Those amounts totaled $618,005. (*See* Novel-Pine Gate Agreement Ex. D; *see also* Am. Compl. ¶¶ 17, 18.)  Novel does not allege that Pine Gate breached Section 2.2, (*see generally*

9

Am. Compl.), nor does Novel dispute Pine Gate's representations that Pine Gate paid Novel the $618,005 Interconnection Reimbursement as required, (*see, e.g.*, Pine Gate's Mem. 2 ("Indeed, Pine Gate has already previously paid Plaintiff the estimated Interconnection Fee that Plaintiff paid Xcel—which is the only payment the contract requires of Pine Gate.")).

Rather, Novel alleges—without citation to the attached contract—that "the parties agreed that Pine Gate would return to Plaintiff any Interconnection Refund received from Xcel if the estimated Interconnection Fee was higher than the actual cost of the interconnection." (Am. Comp. ¶ 21.) The Novel-Pine Gate Agreement simply does not contain a term requiring such a refund. The parties could have drafted Novel-Pine Gate Agreement to provide for such a refund but did not. Indeed, the parties did agree that Novel, not Pine Gate, "would be responsible for payment of any overages charged to Pine Gate if the estimated interconnection fee was less than the ultimate cost of the interconnection" after the Execution Date. (*Id.*; *see* Novel-Pine Gate Agreement § 1.1, "Project Closing Payment" (providing that Pine Gate could deduct from the final purchase price the Interconnection Reimbursement as well as "any additional interconnection costs . . . that are received from Xcel Energy and paid by [Pine Gate] following the Execution Date, for [the Held Project]").) However, the parties did not "agree[] that Pine Gate would return to Plaintiff any Interconnection Refund received from Xcel." (Am. Comp. ¶ 21.) The Novel-Pine Gate Agreement itself is incorporated into the Amended Complaint by reference, *see Nicosia*, 834 F.3d at 230, and I am not bound to accept as true Novel's legal conclusions to the contrary, *see Iqbal*, 556 U.S. at 678.

Since Novel's desired refund provision is not in the Novel-Pine Gate Agreement, Novel argues that "the omission of a provision regarding which party would be entitled to the Interconnection Refund renders the Agreement ambiguous." (Pl.'s Pine Gate Opp. 13.)

10

However, based on the allegations contained in the Amended Complaint this argument is not supported by New York law.  As the New York Court of Appeals recently said,

> A contract's silence on an issue does not create an ambiguity which opens the door to the admissibility of extrinsic evidence to determine the intent of the parties. More to the point, an ambiguity never arises out of what was not written at all, but only out of what was written so blindly and imperfectly that its meaning is doubtful.

*Donohue v. Cuomo*, 184 N.E.3d 860, 866 (N.Y. 2022) (internal quotation marks omitted). Although Novel cites lower court precedent that "an omission as to a material issue can create an ambiguity," (Pl.'s Pine Gate Opp. 10–11 (quoting *Hart v. Kinney Drugs, Inc.*, 888 N.Y.S.2d 297, 300 (3rd Dep't 2009))), this exception "has not been adopted by the New York Court of Appeals," *Acranom Masonry, Inc. v. Wenger Constr. Co.*, No. 14-CV-1839 (PKC), 2017 WL 4358751, at *13 (E.D.N.Y. Sept. 29, 2017).  Even if New York law did allow for "an omission as to a material issue [to] create an ambiguity," Novel has not pleaded any facts that could lead me to find or infer that a provision regarding a possible future refund was "material" to the contract, where "material" means "without which a contract could not be found," *Chen-Oster v. Goldman, Sachs & Co.*, No. 10 CIV. 6950 LBSJCF, 2011 WL 803101, at *3 (S.D.N.Y. Mar. 1, 2011) (quoting *Kirschten v. Rsch. Institutes of Am., Inc.*, No. 94 CIV. 7947 (DC), 1997 WL 739587, at *7 (S.D.N.Y. Sept. 24, 1997)).  The parties had no guarantee if, or when, Xcel would issue any refund; indeed, the refund in question was issued at least 16 months after the execution of the Novel-Pine Gate Agreement.  (*See* Am. Compl. ¶¶ 17, 27.)  In other words, the absence of the provision regarding a possible future refund did not prevent the parties from performing their respective obligations under the Novel-Pine Gate Agreement; therefore, it appears that both believed there was a contract and acted on that belief to fulfill their obligations.  Moreover, as Pine Gate points out, Novel characterizes the Novel-Pine Gate Agreement's Interconnection Reimbursement "as a mere 'accounting measure,' rather than a foundational part of the

11

contract." (Pine Gate's Reply 3 (citing Pl.'s Pine Gate Opp. 10).) Ultimately, if the possibility of a refund from Xcel were that important, Novel would have included it in Section 1.1, which instead provides that Pine Gate would get an effective refund in the event that Novel's $618,005 Interconnection Fee payment to Xcel was an underestimate. (*See* Novel-Pine Gate Agreement § 1.1.)

Novel asks me to "look to extrinsic evidence of the parties' intent," such as "the fact that Pine Gate actually returned the refund issued for the Imholte Project to Novel." (Pl.'s Pine Gate Opp. 10, 12 (emphasis omitted).) However, "[i]f a contract is unambiguous, courts are required to give effect to the contract as written and may not consider extrinsic evidence to alter or interpret its meaning." *Consarc Corp. v. Marine Midland Bank, N.A.*, 996 F.2d 568, 573 (2d Cir. 1993); *see also Chapman v. N.Y. State Div. for Youth*, 546 F.3d 230, 236 (2d Cir. 2008) ("[T]he presence or absence of ambiguity is determined by looking within the four corners of the document, without reference to extrinsic evidence."); *Krumme v. WestPoint Stevens Inc.*, 238 F.3d 133, 139 (2d Cir. 2000) ("Under New York law . . . a court must enforce [a contract's] plain meaning, 'rather than rewrite an unambiguous agreement.'" (quoting *American Express Bank Ltd. v. Uniroyal*, 562 N.Y.S.2d 613, 614 (1st Dep't 1990)). Therefore, since the Novel-Pine Gate Agreement is unambiguous, black letter law bars me from considering extrinsic evidence.

"Where a contract was negotiated between sophisticated, counseled business people negotiating at arm's length, courts should be especially reluctant to interpret an agreement as impliedly stating something which the parties specifically did not include." *Donohue*, 184 N.E.3d at 866 (internal quotation marks omitted). The Novel-Pine Gate Agreement does not contain a contract term and requires Pine Gate to "return to Plaintiff any Interconnection Refund received from Xcel if the estimated Interconnection Fee was higher than the actual cost of the

interconnection." (Am. Comp. ¶ 21.) I cannot rewrite the parties' contract to say otherwise.

### C.     *Unjust Enrichment*

"The basic elements of an unjust enrichment claim in New York require proof that (1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover." *Briarpatch Ltd., L.P v. Phoenix Pictures, Inc.*, 373 F.3d 296, 306 (2d Cir. 2004). "Unjust enrichment is an equitable claim that is unavailable where an adequate remedy at law exists." *Fed. Treasury Enter. Sojuzplodoimport v. Spirits Int'l N.V.*, 400 F. App'x 611, 613 (2d Cir. 2010). "[W]here there is a valid and enforceable contract between the parties, and the subject matter of the unjust enrichment claim is covered by the contract," a court must dismiss the unjust enrichment claim. *ImagePoint, Inc. v. JPMorgan Chase Bank, Nat. Ass'n*, 27 F. Supp. 3d 494, 516 (S.D.N.Y. 2014) (internal quotation marks omitted); *see also Maryland Cas. Co. v. W.R. Grace & Co.*, 218 F.3d 204, 212 (2d Cir. 2000) ("The notion of unjust enrichment applies where there is no contract between the parties."); *Opternative, Inc. v. Jand, Inc.*, No. 17 CIV. 6936 (JFK), 2018 WL 3747171, at *7 (S.D.N.Y. Aug. 7, 2018) ("Under New York law, the existence of a valid contract typically bars recovery based on the quasi-contract theory of unjust enrichment.").

Green Gate argues that Novel's unjust enrichment claim fails in part because Novel has an adequate legal remedy in the form of a breach of contract claim against Pine Gate, (*see* Green Street's Mem. 9–10), and because other contracts govern the Interconnection Fees, (*see id.* 10–13). Green Gate is mistaken. Novel has a contract with Pine Gate, not Green Street, concerning the Interconnection Fees. (*See* Novel-Pine Gate Agreement.) Novel's consulting agreement with Green Street says nothing about the Interconnection Fees or Interconnection Agreement, and therefore does not clearly cover the same "subject matter" as Novel's unjust enrichment

claim. (*See* Novel-Green Street Agreement.) There is no "valid and enforceable contract between the parties"—here Novel and Green Gate—concerning "the subject matter of the unjust enrichment claim." *ImagePoint*, 27 F. Supp. 3d at 516 (internal quotation marks omitted). As a result, "[t]his is not an instance in which alternative remedies may be available as against the same defendant." *Markwica v. Davis*, 473 N.E.2d 750 (N.Y. 1984).

However, Novel's claim for unjust enrichment fails for a related reason, which is that Novel does not plausibly allege that Green Street was enriched at Novel's expense. "Simply claiming that the defendant received a benefit is insufficient to establish a cause of action for unjust enrichment; a plaintiff must also demonstrate that the defendant should have to compensate the plaintiff for the benefit conferred." *Agerbrink v. Model Serv. LLC*, 155 F. Supp. 3d 448, 458 (S.D.N.Y. 2016) (internal citation omitted). Novel has not plausibly pled, and cannot plausibly plead, that it was entitled to any refund from Xcel. The Interconnection Agreement was between Xcel and Solar One, not between Xcel and Novel. (*See* Novel-Pine Gate Agreement §§ 2.2(a); 2.5(c).) When Novel sold Solar One to Pine Gate, the Novel-Pine Gate Agreement did not create any right to a refund from Xcel. (*See supra* Section III(A).) When Pine Gate sold Solar One to Green Street, the parties explicitly provided that the Interconnection Agreement between Xcel and Solar One would remain "in full force and effect." (*Id.* §§ 2.4(b); 4.14(a)(i), (c).) (*See generally* Pine Gate-Green Street Agreement.) Therefore, Solar One, and its current owner, had a right to the refund, not Novel.[5]

---

[5] Green Street argues that Green Street and its affiliates have been improperly named as defendants because "[n]one of the three [corporate entities] received the refund at issue; two of the three have no membership interest in the project company (Novel Solar One); and the third ultimately owns only a tiny fraction." (Green Street's Mem. 8.) Novel requests that I allow Novel to take discovery to determine the proper defendants. (*See* Pl.'s Green Street Opp. 6–9.) Green Street opposes this request. (Green Street's Reply 9–10). I need not reach this issue because even if Novel correctly identified the entity with ownership interest in Solar One, Novel could not state an unjust enrichment claim against that entity.

Novel argues, "Green Street ended up with the money even though it had done no work for it, had not paid the estimated Interconnection Fee in the first place, and had not bargained for the refund." (Pl.'s Green Street Opp. 11.)  As noted, however, the mere fact that Green Street benefited is not sufficient in and of itself to state a claim for unjust enrichment.  Moreover, Novel is not entirely correct that Green Street "had not bargained for the refund" since when Pine Gate sold Solar One to Green Street, the parties explicitly provided that the Interconnection Agreement between Xcel and Solar One would remain "in full force and effect."  (Pine Gate-Green Street Agreement §§ 2.4(b); 4.14(a)(i), (c).)

### IV.     Conclusion

For the foregoing reasons, because I do not have subject matter jurisdiction and any possible amendment to the complaint would be futile, the case is DISMISSED with prejudice, and Defendants' motions to dismiss for failure to state a claim are DENIED as moot.  The Clerk of Court is respectfully directed to terminate the pending motions at Docs. 40 and 44 and close the case.

SO ORDERED.

Dated: July 24, 2023
       New York, New York

                                              Vernon S. Broderick
                                              United States District Judge